## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH MCATEER,<br>Administrator of the Estate of<br>JAMES MCATEER, deceased | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES OF AMERICA | : | |
| c/o United States Attorney General | : | |
| Department of Justice | : | |
| 950 Pennsylvania Avenue, N.W. | : | |
| Washington, D.C. 20530 | : | |
| and | : | |
| c/o U.S. Postmaster General | : | |
| 475 L'Enfant Plaza, S.W. | : | |
| Washington, D.C. 20260-0010 | : | |
| | : | |
| Defendants | : | |

## COMPLAINT

### INTRODUCTION

Plaintiff, Joseph McAteer, Administrator of the Estate of James McAteer, deceased, ("Plaintiff"), by and through his attorney, Gerald B. Baldino, III, Esq., brings this action against the herein named Defendant, the United State of America, by way of Complaint, pursuant to the Federal Tort Claims Act, related to the death of Decedent James McAteer while detained at Federal Detention Center Philadelphia ("FDC – Philadelphia") which at all times relevant hereto was operated by the Federal Bureau of Prisons ("BOP"), an agency of the United States of America. Pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, Plaintiff seeks compensatory damages arising from Defendant United States of America's (hereinafter "Defendant") negligence in failing to adhere to the prevailing professional standard of care which is generally recognized as acceptable and appropriate by reasonably prudent similar health care providers. Plaintiff seeks

all damages and all other relief that this Court deems appropriate, and respectfully represents as follows:

## PARTIES

1.    Plaintiff, Joseph McAteer, Esquire, is the administrator of the Estate of James McAteer, deceased, pursuant to a Certificate of Grant of Letters of Administration issued by the Delaware County Register of Wills, Estate No. 2320-1645.2.

2.    Plaintiff is an adult individual whose address is 219 2nd Avenue, Newtown Square, PA 19073.

3.    At all times material and relevant hereto, Decedent was an inmate in the custody of the BOP, an agency of the Defendant, and resided at FDC-Philadelphia, a correctional facility owned and operated by Defendant.

4.    Defendant the United States of America is a sovereign entity, generally immune from suit, however, the United States of America has partially waived its sovereign immunity under the FTCA.

5.    Pursuant to the FTCA, the United States of America is liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

6.    At all times relevant and material hereto, the employees of BOP and/or FDC Philadelphia were the servants and employees of the United States of America.

7.    At all times material to this action, Defendant was responsible for the correct and prompt response to the health care needs of inmates in its custody.

8.      At all times material to this action, Decedent was an inmate subject to the custody and control of the Defendant and subject to the care and treatment of the Defendant for any and all medical evaluation and treatment.

9.      At all times material to this action, if Decedent required medical evaluation or treatment, his only avenue was to rely on the medical evaluation and treatment provided by the Defendant.

## JURISDICTION AND VENUE

10.      The cause of action which form the basis of this matter arise under the Federal Tort Claims Act ("FTCA").

11.      The District Court has jurisdiction over the FTCA Claims pursuant to 28 U.S.C. §1331 and §1346(b).

12.      Venue is proper in this District Court under 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to this action occurred in this District. In particular, a substantial part of the events and/or omissions set forth herein occurred at FDC Philadelphia, located in the Eastern District of Pennsylvania.

13.      All conditions precedent to the institution of this suit have been fulfilled. Plaintiff timely submitted an Administrative Claim with the U.S. Department of Justice Federal Bureau of Prisons including a signed SF-95 form asserting an administrative claim for injuries sustained by James McAteer while incarcerated at FDC Philadelphia.

14.      On October 18, 2022, Plaintiff was mailed notice of the denial of the claim, and this suit has been properly commenced within six months of the date of the denial letter.

## GENERAL ALLEGATIONS

15.      At all times relevant hereto, James McAteer, the decedent, was detained at FDC Philadelphia.

16.     At all times relevant and material hereto, decedent suffered from mental illnesses, of which Defendant knew or should have known.

17.     The decedent had a long history of mental illness, and upon information and belief was diagnosed as suffering from schizoaffective disorder, borderline personality disorder, and other psychiatric diagnoses.

18.     While decedent was detained at FDC Philadelphia, he was subject to mental health screenings, evaluations, and multiple suicide risk assessments, and as a result staff were made aware of his history of mental illness, suicidal thoughts, and previous suicide attempts.

19.     During his detention, Decedent was prescribed a number of medications to treat his mental illnesses.

20.     Decedent had a history of refusing and/or being non-compliant with medication.

21.     Upon information and belief, Defendant, through its agents, servants, workmen, and/or employees, was aware that Decedent had engaged in self-harm numerous times throughout his life.

22.     By way of example, on numerous occasions throughout his detention, Decedent had reported suicidal ideations including of command auditory hallucinations telling him to kill himself.

23.     Upon information and belief, Defendant through its agents, servants, workmen, and/or employees were also aware that Decedent had previously tried to commit suicide back in 2010 and 2012 and were aware of a 2014 assessment that indicated the Decedent had a history of ten to fifteen prior suicide attempts.

24.     On multiple occasions during his incarceration, decedent was identified as a suicide risk, refused to take his prescribed medications, and expressed a desire to kill himself.

25. By way of example, between March 24, 2020 and April 30, 2020, Decedent reported he was suicidal or had thoughts of harming himself on at least four separate occasions.

26. On or about April 30, 2020, the Decedent report to the unit officer that he was suicidal and would hurt himself.

27. As a result, a suicide watch was initiated immediately.

28. While on suicide watch the inmate continued to exhibit erratic behavior, including but not limited to masturbating non-stop while being on suicide watch and being observed by inmate companions, hitting the duress button to report an erection for over four hours, and being observed having a string tied around his penis and a wash rag hanging out of his anus.

29. Despite this behavior, less than twenty-four (24) hours after the suicide watch was initiated, it was stopped on May 1, 2020.

30. Upon information and belief, Defendant's employees, including but not limited to Dr. Kristin Conlon, Dr. Beth Daniels, and Dr. Lori Jagoda, concluded that the suicide risk of Decedent was low and constant visual observation was no longer warranted.

31. Shortly thereafter, on May 5, 2020, the decedent hung himself while being detained at FDC Philadelphia.

32. Defendant failed to notice or detect the preparations the decedent undertook to attempt his suicide, and the aforesaid staff failed to otherwise monitor or check on the decedent particularly between the dates of May 1, 2020 and May 5, 2020.

33. The decedent was found unresponsive in the early morning of May 5, 2020.

34. The decedent was subsequently pronounced dead at or about 6:50 a.m.

35. Defendant, the United States of America, through its agents, workmen, servants and/or employees in the Federal Bureau of Prisons and at FDC Philadelphia, oversaw decedent's mental health treatment while at FDC Philadelphia.

36. Defendant and its agents, workmen, servants and/or employees in the Federal Bureau of Prisons and at FDC Philadelphia, including but not limited to Dr. Conlon, Dr. Daniels, and Dr. Jagoda, were also informed of decedent's mental health history, suicide history, diagnoses, substance abuse history, treatment history, and prescription information, or had procedures in place that were intended to discover that history

37. While at FDC Philadelphia, the Decedent informed Defendant and its agents, workmen, servants and/or employees in the Federal Bureau of Prisons and at FDC Philadelphia, including but not limited to Dr. Conlon, Dr. Daniels, and Dr. Jagoda, that he was experiencing symptoms of mental illness, and that he was suicidal.

38. During Decedent's time at FDC Philadelphia, while under the care, custody, and control of Defendant, the Decedent presented symptoms indicating he was suicidal, including expressions of a desire to harm himself, expressions of psychotic or irrational thoughts, and demonstrating irrational behaviors.

39. While at FDC-Philadelphia, decedent received inadequate treatment for his mental illness.

40. As a direct and proximate cause of the negligence, carelessness and deliberate indifference of Defendant, decedent suffered severe physician pain, humiliation, mental anguish, fear, physical injuries, and death.

## COUNT I

## FEDERAL TORT CLAIMS ACT - NEGLIGENCE

## <u>Plaintiff v. Defendant United States of America</u>

41.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein at length.

42.    Defendant has in its employ and/or agency doctors, psychiatrists, nurses, mental health professionals, and other medical care providers, over which it exercises control and supervision.

43.    At all times material to this action, Defendant authorized these agents and employees to act for Defendant when they committed the negligent acts alleged herein.

44.    Defendant's agents and employees accepted the undertaking of acting on behalf of Defendant when they committed the negligent acts alleged herein. Defendant had control over its agents and employees when they committed the negligent acts alleged herein.

45.    The negligent acts of Defendant's agents and employees were committed while acting within the course and scope of their employ and/or agency with Defendant. Thus, Defendant is vicariously liable for the actions of its agents and employees when they committed the negligent acts alleged herein.

46.    At all times material to this action, Defendant had a non-delegable duty to provide the Decedent with reasonable medical care. Accordingly, Defendant is also vicariously liable for the actions of any and all contracted-with medical providers at FDC-Philadelphia who rendered care to Plaintiff.

47.    At all times material to this action, Defendant, by and through its staff, doctors, psychiatrists, nurses, mental health professionals, other medical care providers, employees and/or

agents, acting within the course and scope of their employment and/or agency, undertook a duty to render medical care to Decedent Plaintiff, Mr. Hernandez, in a skillful and careful manner and in accordance with the accepted standards of medical care and treatment rendered in such cases.

48.    Decedent's injuries, losses, and damages suffered as a result thereof were proximately caused by Defendant's carelessness and negligence as set forth herein.

49.    Defendant, through its, physician(s), psychologist(s), nurse(s), therapist(s), mental health professional(s), physician assistant(s), medical providers, staff and/or employees, failed to exercise the judgment of a reasonable physician under the circumstances as follows:

(a)    Failing to properly diagnose and treat decedent's condition;

(b)    Failing to properly treat decedent;

(c)    Failing to properly care for the safety of decedent when treating decedent's condition;

(d)    Failing to properly supervise the treatment of decedent when treating decedent's condition;

(e)    Failing to extend proper and reasonable services when treating decedent's condition;

(f)    Failing to adequately record the symptoms expressed by decedent and the treatment provided by defendant;

(g)    Failing to exercise reasonable care and diligence in the application of knowledge and skill to decedent's treatment when treating decedent's condition;

(h)    Failing to use best judgment in the treatment and care of decedent when treating decedent's condition;

(i)    Holding out expertise which induced decedent to believe that adequate and proper care would be provided when, in fact, adequate, proper and reasonable care was not provided when treating decedent's condition;

(j)    Failing to recognize standards of good practice in the profession and in treatment of individuals such as decedent when treating decedent's condition;

(k)    Failing to adhere to the accepted procedures of administering treatment to individuals such as decedent when treating decedent's condition;

(l)    Failing to possess the degree of professional learning, skill and ability which others similarly situated, ordinarily possess when treating decedent's condition;

(m)    Failing to exercise reasonable care and diligence in the application of their knowledge and skill to decedent's care when treating decedent's condition;

(n)    Failing to refer decedent for appropriate treatment;

(o)    Failing to refer decedent to the appropriate specialist;

(p)    Failing to monitor decedent's condition;

(q)    Failing to discover and diagnose conditions within decedent's body;

(r)    Failing to conform to the required standard of care when treating decedent's condition;

(s)    Failing to properly monitor those employees, individuals, agents, servants and/or workmen under defendant's control who were responsible for treating decedent;

(t)    Failing to investigate decedent's symptoms and conditions;

(v)    Failing to properly assess decedent's symptoms and obtain appropriate diagnostic studies;

(w)    Failing to properly examine decedent and refer him to the appropriate specialist;

(x)    Failing to properly evaluate Decedent's suicide risk;

(y)    Improperly removing Decedent from suicide watch;

(z)    Failing to properly apprise themselves of, evaluate, and consider Decedent's mental health history, prior diagnoses, and suicide risk factors;

(aa)    Improperly classifying the decedent as not suicidal and/or as low risk for suicide;

(bb)    failing to timely provide the decedent with medication to address and treat his mental illness;

(cc)    failing to take reasonable steps to prevent the decedent's attempt and/or eventual suicide, and by failing to communicate to the correctional officers, staff, social workers, mental health professions, and/or medical personnel that he was suicidal and suffered from mental illnesses;

(dd)    improperly placing the decedent in an area of the prison where he was not monitored on a frequent basis;

(ee)    failing to institute and/or properly apply policies requiring the protocol of a full medical and psychiatric screening prior to placing a prisoner, with known mental health concerns in a cell alone;

(ff)    falling to institute policies of close monitoring of prisoners with known mental health conditions or failing to ensure that prisoner needs, such as mental health medications, were furnished, as needed;

(gg)   failing to institute policies assuring that inmates who suffer from known serious medical conditions, not be placed in confinement which will or can exacerbate their symptoms or aggravate their health conditions;

(hh)   Improperly ignoring Decedent's erratic behavior while under suicide watch when deciding to remove Decedent from suicide watch in less than twenty-four hours on or about May 1, 2020;

(ii)   failing to keep and/or place decedent under special observation/suicide watch for suicide;

(jj)   failing to have convey the significance of decedent's mental health diagnoses with prison staff; and

(kk)   failing to classify decedent as a high suicide risk.

50.   Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

51.   As a direct and proximate result of the conduct set forth above, decedent suffered:

(a)   Extended pain and suffering;

(b)   Serious and permanent injury,

(c)   loss of life's pleasures;

(d)   loss of function;

(e)   fear and conscious knowledge of his impending death;

(f)   Death; and

(g)   Mental anguish and upset.

WHEREFORE, Plaintiff demands judgment in their favor against the Defendant, the United States of America, in the amount of $10,000,000.00 as demanded in Plaintiff's Form 95

which was submitted to the Defendant care of the U.S. Department of Justice Federal Bureau of Prisons.

**SACCHETTA & BALDINO**

By:  */s/ Gerald B. Baldino, III*
GERALD B.  BALDINO, III, ESQUIRE
Attorney I.D. No.  326111
308 East Second Street
Media, PA 19063
P: (610) 891-9212
F: (610) 891-7190
gbaldino@sbattorney.com
Attorney for Plaintiff